KATHERINE ERVING, APPELLANT AND CROSS-APPELLEE, V. TRI-CON INDUSTRIES AND CORNHUSKER CASUALTY COMPANY, APPELLEES AND CROSS-APPELLANTS.

314 N.W.2d 253

Filed January 4, 1982. No. 44201.

A. James McArthur for appellant.

Baylor, Evnen, Curtiss, Grimit & Witt for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Katherine Erving, appeals from a judgment of the Nebraska Workmen's Compensation Court, entered by the court on rehearing, which found that while Mrs. Erving suffered a compensatory injury for which she was entitled to temporary compensation, she failed to establish that as a result of the accident she suffered any disability beyond September 21, 1980. Accordingly, the Workmen's Compensation Court denied any recovery to Mrs. Erving beyond September 21, 1980. It is from this order that Mrs. Erving appeals. Her employer, Tri-Con Industries, has cross-appealed, maintaining that not only did Mrs. Erving fail to establish that she sustained any injury after September 21, 1980, but, in fact, failed to establish that she sustained any injury resulting from an accident arising out of and in the course of her employment, and is therefore not entitled to any recovery. We believe that the compensation court was correct in all respects and its judgment entered on rehearing should be affirmed.

Mrs. Erving was employed by Tri-Con Industries on May 20, 1979. Her duties consisted primarily of what the record describes as crimping snowmobile bungee cords as they passed along an assembly line. This work apparently required her to utilize a scissors-like device against which she would apply pressure with her left palm while crimping a small metal disk onto the bungee cord with her right hand. It appears from the evidence that Mrs. Erving would perform this function some 20 to 30 times each day.

According to the testimony, Mrs. Erving began to experience a numbness in the fingers of her left hand in 1979 after she started working at Tri-Con Industries. She stated that she was performing her usual employment duties when this numbness gradually began, and as she continued working it became worse and worse. She continued working until September 24, 1979, when the pain and numbness in her left hand prevented her from continuing with her employment duties.

Ultimately, Mrs. Erving was referred to Dr. Benjamin Gelber. He examined her and concluded that she was suffering from a carpal tunnel syndrome, caused by her employment. The record discloses that Mrs. Erving had no similar difficulty prior to her employment with Tri-Con Industries.

In November of 1979 Mrs. Erving was hospitalized and carpal tunnel release surgery was performed upon her hand. In January of 1980 Dr. Gelber suggested to Mrs. Erving that she could return to work, but she maintained that because of constant pain in her hand and wrist she was unable to perform her employment duties at Tri-Con Industries. Dr. Gelber was of the opinion that Mrs. Erving's employment aggravated a preexisting condition in her left wrist and made it symptomatic, thus requiring the surgery. He was, however, of the further opinion that there was no permanent disability and he knew of no reason why Mrs. Erving could not return to full-time employment.

Dr. George Hachiya testified that he examined Mrs. Erving prior to the hearing. In his opinion, Mrs. Erving was experiencing an hysterical conversion reaction which results in a patient converting emotional pain into a physical symptom. Dr. Hachiya's conclusion was based upon three interviews. The initial interview was done on September 4, 1980, and lasted for approximately 30 minutes; a second interview was conducted on September 13, 1980, and lasted for 20 minutes; and a final interview was conducted on September 18, 1980, and lasted for approximately 35 or 40 minutes. Although Dr. Hachiya testified that, in his opinion, Mrs. Erving was suffering from conversion hysteria, he admitted that a psychological test conducted by a Dr. Wayne Price noted the absence of la belle indifference, an important characteristic of conversion hysteria. Dr. Price indicated in his report to Dr. Hachiya that he could not state with certainty that Mrs. Erving had a conversion neurosis, though it was possible. Dr. Hachiya explained the difference in opinion by simply

testifying that he did not agree with Dr. Price's conclusions. Dr. Hachiya did, however, testify that, in his opinion, Mrs. Erving still should be able to do some things but could not perform fine tasks or heavy lifting. He was unable to explain the reason for her condition.

In examining the order of the Workmen's Compensation Court, both as to its finding that Mrs. Erving suffered temporary disability, with which Tri-Con Industries disagrees, and with regard to the compensation court's refusing to find that Mrs. Erving suffered permanent injuries, with which Mrs. Erving disagrees, we must keep in mind certain basic rules involving decisions of the compensation court.

In *Kudera v. Minnesota Mining & Manuf. Co.*, 201 Neb. 235, 238, 266 N.W.2d 915, 917 (1978), we said: "This court is not free in workmen's compensation cases to weigh the facts anew. Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong." And, further, in *Buck v. Iowa Beef Processors, Inc.*, 198 Neb. 125, 127-28, 251 N.W.2d 875, 877 (1977), we said: "In testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom."

As we have already indicated, we believe that those principles compel us to affirm the judgment of the Workmen's Compensation Court.

In the first instance, we cannot say as a matter of law that there is no evidence from which the compensation court could conclude that Mrs. Erving suffered a compensable injury arising out of and in the course of her employment. The medical testimony was sufficient to permit the compensation court to find Mrs. Erving's action in applying pressure to the scissors-like device

was sufficient to bring about the carpal tunnel syndrome which required her to have surgery. Tri-Con argues that there is no evidence of a compensable injury because there is no single event which produced a sudden or violent injury having objective symptoms. In *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980), we were presented with a somewhat similar situation. In concluding that the employee had sustained a compensable injury under the workmen's compensation law, we noted at 254-55, 298 N.W.2d at 159: "The plaintiff's use of her hands to strike the pallets and boxes caused an injury which produced objective symptoms at the time. Each striking was a sudden and violent event. Although no one blow produced an injury severe enough to be compensable by itself, the cumulative effect of the repeated trauma resulted in an injury which produced disability. Most jurisdictions regard the time of accident as sufficiently definite if either the cause is reasonably limited in time or the result materializes at an identifiable point. 1B Larson, Workmen's Compensation Law § 39.00 (1980). The facts in this case satisfied both tests. The plaintiff's difficulty with her hands commenced immediately after she was transferred to stack and record. In that respect, this case may be distinguished from cases involving chronic conditions which develop over a period of many years where the injury cannot be traced to a particular job or activity of the workman."

And as we noted in *Wolfe v. American Community Stores*, 205 Neb. 763, 767, 290 N.W.2d 195, 198 (1980): "[T]he requirement of objective symptoms of an injury produced at the time of the accident is satisfied if the symptoms manifest themselves according to the natural course of such matters without any independent intervening cause being shown." We believe such is the case here.

We cannot say that the compensation court was in error when it found from the evidence that the action by Mrs. Erving in squeezing the bungee device pro-

duced her injury, resulting in the temporary disability. The evidence shows that she did not suffer from this affliction prior to her employment and that the injury was consistent with the type of work she was doing, though admittedly one may obtain this type of injury in other ways. The fact that it may be obtained in other ways does not make the compensation court's finding that it happened as a result of her employment in error.

Likewise, with regard to the matter of the permanent injury, we believe the same general principles must be applied. The compensation court found that Mrs. Erving was no longer disabled after September 21, 1980.

Mrs. Erving argues that where an expert testifies without contradiction or conflicting evidence, a court is required to accept the expert's testimony as true. That, of course, is not the rule in this jurisdiction. Triers of fact are not required to take the opinions of experts as binding upon them. *Swartz v. Hess, Inc.*, 188 Neb. 542, 198 N.W.2d 64 (1972). Furthermore, the testimony of Dr. Hachiya was not without conflict. First of all, Dr. Gelber testified that, in his opinion, Mrs. Erving should be able to return to work. The fact that Dr. Gelber is a neurosurgeon and not a psychiatrist does not in and of itself require the compensation court to ignore his testimony. Like all testimony of experts, it merely goes to the weight to be given. Moreover, Dr. Hachiya's testimony was neither unqualified nor absolute in nature. The testimony of all the witnesses at best produced a conflict which the compensation court as the trier of fact had to resolve. *Inserra v. Village Inn Pancake House*, 197 Neb. 168, 247 N.W.2d 625 (1976); *Brown v. Globe Laboratories, Inc.*, 165 Neb. 138, 84 N.W.2d 151 (1957); *Smith v. Platte Valley Public Power and Irrigation District*, 151 Neb. 49, 36 N.W.2d 478 (1949).

A workmen's compensation award cannot be based on possibility or speculation, and if an inference favorable to the claimant can only be reached on the basis thereof,

then he cannot recover. *Stevens v. Josten-Wilbert Vault Co.*, 182 Neb. 322, 154 N.W.2d 764 (1967); *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965).

While we have heretofore recognized that a workman is entitled to recover compensation for a neurosis if it is a proximate result of his injury and results in disability, see, *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 144 N.W.2d 154 (1966); *Lee v. Lincoln Cleaning & Dye Works*, 145 Neb. 124, 15 N.W.2d 330 (1944); *Haskett v. National Biscuit Co.*, 177 Neb. 915, 131 N.W.2d 597 (1964), where, as here, the compensation court resolved the conflict against Mrs. Erving, we are not able to say it was error. The compensation court was free to accept or reject the testimony of Dr. Hachiya, as it determined. Absent Dr. Hachiya's conclusions, the record is devoid of any evidence to support a claim that Mrs. Erving continues to be disabled.

The judgment of the compensation court is in all respects affirmed.

AFFIRMED.

WHITE, J., concurs in the result.